# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

RADCLIFFE McNAB,

                          Plaintiff,

                                                            9:12-CV-26

         v.                                                          (GTS/ATB)

THE STATE OF NEW YORK, et al.,

                          Defendants.

---

RADCLIFFE O. McNAB, Plaintiff, pro se
WILLIAM A. SCOTT, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, Chief United States District Judge. Presently before the court is the remaining defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 51). On July 31, 2015, the court sent plaintiff a notice of the response deadline to the motion for summary judgment. (Dkt. No. 52). On August 24, 2015, plaintiff filed a document which appears to be a copy of his complaint, together with a note, referring to the court's July 31, 2015 letter and stating that, as of August 19, 2015, plaintiff had not received a copy of the summary judgment motion. (Dkt. No. 53). In that note, plaintiff also stated that his "answers" remain the same, and all the defendants "remain in it." (*Id.* at 1). The court would first point out that, based upon prior orders of the court, only two defendants remain, one of whom has not been served. (Dkt. Nos. 25, 29, 31, 34, 35, 41).

Defendants have filed two letters, stating that, instead of responding to the summary judgment motion, plaintiff has sent defense counsel copies of the amended complaint. (Dkt. Nos. 55, 57). Plaintiff indicated that he did not receive the summary judgment motion, and defense counsel states that he mailed two copies of the motion to the address listed on the docket sheet. (*Id.*) On September 28, 2015, defense counsel's letter to the court states that he was "in receipt of a second letter from the Plaintiff in this matter claiming to have not received a copy of [the summary judgment motion], despite two copies of the motion having been sent to plaintiff." (Dkt. No. 57). Defense counsel further stated that to the extent that plaintiff's "letter" was intended to act as his opposition to the summary judgment motion, he failed to address any of the arguments contained therein, and instead copied the allegations in the complaint. (*Id.*)

It does not appear that any of the mail that the court sent to plaintiff was returned to the court. It is also clear that plaintiff received the notice sent to him by the court in Dkt. No. 52, which was sent to plaintiff address the day after defendants filed their summary judgment motion because plaintiff referenced the court's notice in his correspondence. (Dkt. No. 51, 52). Plaintiff has been given ample opportunity to respond to the motion, and based upon the mailings that he did receive, the court must assume that plaintiff received the motion sent by the defendants on two occasions.

For the following reasons, this court agrees with defendants and will recommend that the complaint be dismissed in its entirety as against the remaining defendants.

**I.**  **Facts**

The court will only briefly review the facts in this case because the basis for this

2

court's decision is procedural, not substantive and does not require an in-depth discussion of the facts. In his amended complaint, plaintiff alleges that on March 31, 2010, he was subjected to an improper and sexually abusive pat-frisk[1] by officers at the Ulster Correctional Facility ("Ulster CF"). Plaintiff claims that this improper search took place outside the mess hall while he was waiting in line. Plaintiff claims that this occurred in front of other staff members and "several other inmates." (AC at 3).

Plaintiff alleges that at approximately 5:15 p.m. on March 31, 2010, he was on his way to dinner, when he had a discussion with Officer Gutierrez[2] about eating pork and lobster. (AC at 5). Officer Gutierrez then told the inmates – about 50 of them – to proceed into the mess hall. Plaintiff entered the mess hall, and Officer Gutierrez stopped him and called him "into the vestibule of the mess hall," telling plaintiff to unzip his jacket and empty his jacket pockets. Plaintiff states that he complied with the order. Officer Gutierrez took two pencils from plaintiff, threw them away, and let plaintiff keep a piece of paper that had been in his pocket. Plaintiff states that Officer Gutierrez walked back into the mess hall and left plaintiff with an officer that plaintiff calls "Mo."

Officer Mo told plaintiff to to over to the wall of the mess hall, face the wall, put his hands up, and spread his legs. Plaintiff states that he complied, but he was afraid

---

[1] Plaintiff refers to this incident as being "raped" by correctional officers. (Amended Complaint ("AC") at 3). However, plaintiff's description of the incident is more in line with an allegedly improper pat-frisk.

[2] Plaintiff refers to this individual as an officer, who was later identified as Gutierrez and continues to identify him as "the officer." In order to understand to whom the court is referring, I will substitute Gutierrez's name. Apparently Officer Gutierrez told the inmates who "do not eat pork" to go to the back of the line, and plaintiff responded that he did not eat pork, he ate lobster. (AC at 6).

3

and "off balance." (*Id.*) Plaintiff states that Officer Mo pulled plaintiff's pants and underwear down and performed a pat-frisk which involves fondling plaintiff's genitals "massaging them like a medical examiner examining plaintiff's genitals for lumps." (*Id.*) Plaintiff states that this conduct constituted "rape." (AC at 7).

Plaintiff states that "during this ordeal," defendant Officer Miller who was in charge of "overseeing food distribution and service in the kitchen, came outside to where we were." During the search, it was discovered that plaintiff was not in possession of his "state ID." Plaintiff states that Officers Mo and Miller "started to make it seem like the search was about the missing ID." Plaintiff states that neither officer reported the incident to his superiors. Plaintiff claims that he was so upset that he did not eat his evening meal.

Plaintiff alleges that the next day, he went to dinner, and Officer Miller was present "at his post in the kitchen," making sure that the food was distributed properly. Plaintiff claims that he handed his ID to an officer and waited for food. However, when plaintiff's food arrived, the ground meat that was on top of his macaroni was "foul smelling," and there was "brownish, reddish bloody water" at the bottom of the tray. Plaintiff states that the meat that was ground and placed on his food was "raw poultry." Other inmates told plaintiff to throw the food away, and plaintiff states that he did not show it to another officer "because going to an officer without permission may be hazardous to your health." (AC at 7-8). Plaintiff assumes that Officer Miller was responsible because inmates who work in the kitchen do not have access to raw meat, Miller was the only officer working in the North Side kitchen on April 1, 2010, and he

4

was the officer in charge of food security and safety for the evening meal. (AC at 8).

Plaintiff claims that the next week, he wrote to his girlfriend in Spain and wrote to Superintendent Carlsen about the incident. (*Id.*) Plaintiff states that he "filed a Grievance," and an "in-house" investigation was completed. Statements were taken by the medical staff and other DOCCS supervisors. Plaintiff states that he was told by Deputy Superintendent Morton that there would be a follow-up investigation the next week. Plaintiff states that the following week Officer R. Wood came to plaintiff's dormitory and identified himself as Officer "Mo," who performed the pat-frisk and who plaintiff accused of sexual assault. Officer Wood told plaintiff to explain to him exactly what happened so Wood could "write it down." Plaintiff claims that Officer Wood is not "Officer Mo," and plaintiff told Wood that he was not plaintiff's attacker. Plaintiff states that Officer Wood only came to plaintiff to harass and intimidate him, but that this would not stop plaintiff from going further. (*Id.*) Plaintiff also claims that Officer Wood was impersonating "Mo" so that Officer Mo could "escape justice."[3] (AC at 10).

Plaintiff claims that Deputy Superintendent Morton did not "make good" on his promise to conduct a follow-up investigation, and that Officer Miller was still supervising the food in the kitchen. Plaintiff states that he stopped eating for fear that he would be poisoned. Plaintiff states that he was transferred to Riverview on an unspecified date, but alleges that he had to come back and forth to Ulster CF. Plaintiff

---

[3] Plaintiff states that he filed a Freedom of Information Law ("FOIL") request in 2012, seeking a list of all the officers who were working in the North Side Mess Hall on March 31, 2010, and that Officer Wood is not on the list, proving that he could not have been the officer who performed the pat-frisk. (AC at 11 & Exh. D).

5

states that on September 8, 2010, he was sent back to Ulster CF, and would not eat there from September 8 until September 20 because he feared poisoning by Miller or his friends.

Plaintiff states that his Exhibit A is a statement plaintiff allegedly sent to the Attorney General of New York, the DOCCS Commissioner and the Superintendent of Ulster CF, complaining about the "rape." Plaintiff claims that none of these individuals reported the rape to the proper authorities in violation of New York State Law. (AC at 8-9). Upon initial review, the Honorable Glenn T. Suddaby dismissed all claims against all defendants, but sua sponte reconsidered his decision, and on October 10, 2013, he reinstated the claims as against defendants Gutierrez and Miller relative to the improper search claims only. (Dkt. Nos. 24, 25).

## II. Service of Process

### A. Legal Standard

The Federal Rules require that a defendant be served within 120 days of filing the complaint. FED. R. CIV. P. 4(m). The failure to serve a defendant within 120 days of filing the complaint may be a ground for dismissal of the complaint unless good cause is shown for an extension of that time. *Id.* If the court raises the issue on its own motion, the court must provide plaintiff with notice that the complaint is subject to dismissal. (*Id.*) If plaintiff shows good cause for failure to effect service, the court must extend the time for an appropriate period to allow plaintiff to complete service. (*Id.*)

### B. Application

In this case, defendants raise the issue of improper service and argue that the

complaint should be dismissed as against defendant Gutierrez because plaintiff has failed to effect service within 120 days, even after several tries and some assistance from the court in attempting to identify this defendant.[4] This court agrees.

The docket sheet in this action shows that on October 13, 2010, the Clerk of the Court issued summonses for both defendants Gutierrez and Miller. (Dkt. No. 27). On December 12, 2013, both summonses were returned "unexecuted." (Dkt. No. 29). Summonses were reissued on December 26, 2013 for both defendants. (Dkt. No. 30). On January 29, 2014, both summonses were again returned "unexecuted." (Dkt. Nos. 31, 32).

On May 12, 2014, the court wrote a letter to Nancy Heywood, Esq., Deputy Counsel for the New York State Department of Corrections and Community Supervision ("DOCCS") to ask her assistance in determining whether DOCCS would designate an agent for service of process. (Dkt. No. 34). On June 6, 2014, Deputy Counsel Heywood filed a letter, stating that DOCCS had authority to accept service for defendant R. Miller, but that DOCCS was "unable to identify" defendant Gutierrez, and thus, could not accept service on his behalf. (Dkt. No. 35). A summons was reissued for defendant Miller, and an acknowledgment of service was filed by defendant Miller on August 28, 2014. (Dkt. Nos. 37, 40).

---

[4] Technically, defense counsel does not "represent" defendant Gutierrez because he has neither been identified, nor served. However, defense counsel has still made the argument on his behalf. The court notes that plaintiff does not allege that either Gutierrez or Miller actually conducted the pat-frisk. Officer "Mo" was never identified by plaintiff. Although Officer Wood ultimately took responsibility for the pat-frisk (although not as plaintiff described it), plaintiff maintained that Officer Wood was not "Mo," and claimed that all the defendants were conspiring to hide the identity of the true perpetrator. The conspiracy claim was dismissed by Judge Suddaby in his initial order.

On September 19, 2014, the court wrote to plaintiff in an effort to obtain more information regarding the identification of defendant Gutierrez. (Dkt. No. 41). The court informed plaintiff that DOCCS was unable to find an employee named Gutierrez in reference to plaintiff's action. (*Id.*) The court sent plaintiff a USM-285 form to complete if plaintiff could obtain any additional information about this defendant.[5] The court notes that in 2012, plaintiff sent a FOIL request to the Superintendent of Ulster CF, asking the names of the officers who worked at the North Side Mess Hall on March 31, 2010 and April 5, 2010.[6] (Dkt. No. 17-2 at 6). A review of the response to plaintiff's FOIL request shows that there was no officer named Gutierrez assigned to the Mess Hall at the time of the incident. No further information has been obtained regarding this defendant. Plaintiff has been given various opportunities to identify the defendant and effect service. It does not appear that Officer "Gutierrez" will ever be identified or served. Thus, this court must recommend dismissal as against defendant Gutierrez for failure to serve the complaint on him within the time specified in Fed. R. Civ. P. 4(m).

## III. <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir.

---

[5] At the time, plaintiff had been released from incarceration and was no longer an inmate of DOCCS.

[6] The FOIL request and the facility's response are attached as Exhibit D to plaintiff's amended complaint. (Dkt. No. 17-2 at 6, 7-8).

2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin*, 467 F.3d at 273. In that context, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

"[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (citing, *inter alia*, *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they

9

suggest")). "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).

IV. **Exhaustion of Administrative Remedies**

    A.    **Legal Standards**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion requirement applies, *inter alia*, to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The exhaustion requirement does not apply to former inmates who commence an action after their release from custody. *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999). However, the exhaustion requirement applies to former inmates who commenced the action while still in custody but were released while the action was pending. *See Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003). Dismissal is appropriate for failure to exhaust when a prisoner was incarcerated for "several months after the onset of the conditions that gave rise to his complaints and prior to his release." *Berry*,

10

366 F.3d at 88.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218–19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a

11

grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* at § 701.8.

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[7] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311–12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Although the Second Circuit has "questioned," without deciding, whether *Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry in recent cases. *See, e.g.*, *Heyliger v. Gebler*, No. 14-4092-pr, __ F. App'x __, 2015 WL 5616288, at *1-2 (2d Cir. Sept. 25, 2015) (applying the *Hemphill* analysis without further discussion); *Amador v. Andrews*, 655 F.3d 89, 102-103 (2d Cir. 2011) (declining to reach the issue, but noting that even under "pre-*Woodford* caselaw" the

---

[7] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

12

plaintiff had failed to establish either that defendants were estopped from asserting the defense or whether special circumstances excused exhaustion); *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007); *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011).[8] As discussed below, this court finds that plaintiff has not shown that the exhaustion requirement should be excused, and thus, plaintiff's case should be dismissed.

B.  **Application**

Defendants argue that plaintiff failed to exhaust his administrative remedies. Because plaintiff was an inmate when he filed this action, the exhaustion requirement still applies to him even though he has now been released. Defendants have filed declarations by Jeffery Hale, the Assistant Director of the Inmate Grievance Program ("IGP") for DOCCS and Joe Carola, the Inmate Grievance Program Supervisor at Ulster CF. (Hale Decl. & Carola Decl.) (Dkt. Nos. 51-4, 51-5). As the Assistant IGP Director, Jeffrey Hale is the custodian of records maintained by the CORC. (Hale Decl. ¶¶ 1-2) (Dkt. No. 51-4). As the IGP Supervisor at Ulster CF, Mr. Carola oversees the Inmate Grievance Program at the facility. (Carola Decl. ¶ 4). Mr. Carola is responsible for keeping records of the grievances filed by inmates at Ulster CF, and because he is

---

[8] This court also notes that, based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 548 U.S. at 104 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates*." *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

13

also the custodian of the grievance records at Ulster CF, he has access to all the records of those grievances. (*Id.*)

Mr. Carola conducted a search of the facility's grievance clerk log to determine if plaintiff had filed any facility grievances relating to an improper strip search from March 2010 through December 2010. (Carola Decl. ¶ 6). Mr. Carola's search revealed no grievances filed by plaintiff during that entire time period. (Carola Decl. ¶ 7). Mr. Hale conducted a search of the CORC records to locate any grievance appeals filed by plaintiff to the CORC relating to an improper strip search at Ulster CF. (Hale Decl. ¶ 6 & Exhibit 1). Mr. Hale's search revealed that plaintiff did not appeal any grievance determination, challenging the strip search protocol at Ulster CF in 2010.[9] (*Id.*)

Attached to plaintiff's amended complaint is a memorandum from Deputy Superintendent for Security Services Robert I. Morton, dated May 10, 2010. (AC Ex. C). The memorandum is entitled "Investigation of 'Pat Frisk' Complaint." (*Id.*) The memorandum indicates that an investigation was conducted concerning plaintiff's "letter of complaint received on or about 4/8/10,"[10] in which he reported being pat frisked by Officer 'Goutiereras' in front of the mess hall on March 31, 2010 at 5:15 p.m. (*Id.*) According to DSS Morton, plaintiff's letter indicated that the officer pulled

---

[9] Exhibit 1 contains six appeals by plaintiff to the CORC. Each one was filed in 2011, while plaintiff was incarcerated at Auburn Correctional Facility, and none having anything to do with a stip search. (Hale Decl. Ex. 1 at 2). The court does note that on October 13, 2011, plaintiff filed an appeal from a grievance at Auburn entitled "Sexually Exploited During Urinalysis." (*Id.*) Clearly, plaintiff was well aware of the procedure for filing appeals of such claims.

[10] Mr. Carola states that plaintiff did not file any grievances during this time period. Although in plaintiff's complaint, he states that he filed a "grievance," (AC at 8), it appears that he is referring to the "letter of complaint" that DSS Morton mentioned in his memorandum. There appears to be no question that DSS Morton conducted an investigation.

14

down plaintiff's pants and "'held onto [his] genitals.'" (*Id.*)

The memorandum states that during the investigation, plaintiff was interviewed twice, he was examined by medical staff, and Morton received "responses" from staff members who were present during the incident. The investigation revealed that plaintiff made some inconsistent statements during the investigation; Officer Wood pat frisked plaintiff, but denied pulling his pants down or touching his genitals; all three staff members who were present stated that plaintiff's pants were not pulled down; and plaintiff offered no witnesses to the incident. DSS Morton found that plaintiff's allegations were "preposterous, considering the fact that there were hundreds of inmates being fed at that time and no one witnessed the alleged incident." (*Id.*)

While it is clear that plaintiff wrote a "letter" that was investigated and an unfavorable result obtained, plaintiff never filed a formal grievance, nor did he attempt to appeal DSS Morton's determination. Plaintiff alleges that DSS Morton promised to "follow-up,"[11] but it is unclear after reading DSS Morton's memorandum, including his determination that plaintiff's allegations were "preposterous," what his "follow-up" would entail. In any event, plaintiff did not appeal or attempt to appeal this decision.[12]

---

[11] (AC at 10). Plaintiff may be referring to the food incident, but this was a separate incident that was dismissed from the complaint by Judge Suddaby.

[12] The court notes that plaintiff cannot argue that DSS Morton's alleged failure to "follow-up" excused the exhaustion requirement. First, DSS Morton's memorandum does not imply that there will be any "follow-up" investigation. Even if it did so imply, the courts in this circuit have held that the failure to receive a response from either the IGRP or the Superintendent does not excuse exhaustion. *Lopez v. Cipolini*, No. 14-CV-2442, __ F. Supp. 3d __, 2015 WL 5732076, at *7 (S.D.N.Y. Sept. 30, 2015) (citing *Garvin v. Rivera*, No. 13-CV-7054, 2015 WL 876464, at *4 (S.D.N.Y. Feb. 28, 2015) ("Courts in [the Second Circuit] have consistently held that the failure to take an available administrative appeal, even when the initial grievance receives no response constitutes a failure to exhaust administrative remedies.")). The regulation regarding harassment grievance specifically

Plaintiff states that he wrote to the Attorney General and others on October 19, 2010,[13] but such letters do not suffice to fulfill the exhaustion requirement. *Nelson v. Plumley*, No. 9:12-CV-422, 2014 WL 4659327, at *7 n.8 (N.D.N.Y. Sept. 17, 2014) (notwithstanding letters to the Inspector General and other officials, a plaintiff must still meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct); *McPherson v. Rogers*, No. 9:12-CV-766, 2014 WL 675830, at *7 (N.D.N.Y. Feb. 21, 2014) (even if the Inspector General investigates the inmate's complaint, but provides an unfavorable result, plaintiff must still appeal the decision to the CORC) (citing *Smith v. Kelly*, 985 F. Supp. 2d 275, 290-91 (N.D.N.Y. 2013)); *Davis v. Rynkewicz*, No. 11-CV-431, 2015 WL 1038098, at *19 (W.D.N.Y. Mar. 10, 2015) (citing cases).

Based upon Mr. Hales's declaration in this case that plaintiff never appealed any complaint about the improper search to the CORC, this court finds that plaintiff failed to exhaust his administrative remedies. The court will proceed to determine whether any of the *Hemphill* exceptions apply, notwithstanding the lack of a specific Second Circuit ruling on their application.

The grievance procedure was "available" to plaintiff. He clearly submitted a "letter of complaint" that was investigated at the facility level shortly after the incident. Thus, it is clear that none of the defendants prevented plaintiff from filing a grievance or from appealing any unfavorable determination. Plaintiff claims that Officer Wood

---

provides that if the Superintendent does not respond within the appropriate time period, "the grievant may appeal his/her grievance to the CORC." 7 N.Y.C.R.R. § 701.8(g).

[13] This was months after the April 2010 incident.

came to speak with him and "intimidated" him by stating that he was the Officer who conducted the frisk, and he wanted plaintiff to explain exactly what he believed happened during the incident. (AC at 8-12). However, plaintiff stated that "[he] was not going to let [Wood's alleged intimidation] stop him from going forward." (AC at 8). Thus, plaintiff was not "prevented" from filing a grievance or "going forward" with his complaint, and plaintiff cannot claim that defendants are "estopped" from asserting the defense of failure to exhaust.

Finally, there are no special circumstances that would justify plaintiff's failure to appeal DSS Morton's decision or his failure to file a grievance regarding an incident which he clearly believed to be egregious. Plaintiff does state he was transferred in and out of Ulster CF, but he clearly had time to write a letter to DSS Morton, so there is no indication that plaintiff was transferred prior to being able to file a grievance or that such a transfer would preclude him from doing so. Thus, plaintiff has failed to exhaust his administrative remedies, and the court must recommend dismissal of the complaint.

The final question is whether the complaint should be dismissed with or without prejudice. Generally, when an action is dismissed for failure to exhaust, the dismissal is without prejudice to plaintiff exhausting his remedies and refiling his complaint. *Berry v. Kerik*, 366 F.3d at 88. In *Berry*, the court held that when a released inmate's administrative remedies were available to him during his confinement, but he unjustifiably failed take advantage of them, it was appropriate to dismiss the action with prejudice. *Id.* In a footnote, the court in *Berry* stated that it was not addressing a situation in which only a brief interval elapses between the episode giving rise to the

17

plaintiff's complaint and the plaintiff's transfer "to another jurisdiction." *Id.* at 88 n.3. As stated above, plaintiff in this case was not transferred immediately after the incident and had time to write to DSS Morton, who conducted an investigation. Thus, there is no need to discuss the length of time plaintiff was at Ulster CF after the incident.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 51) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY AS TO ALL REMAINING DEFENDANTS (MILLER and GUTIERREZ)**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 7, 2015

/s/ Andrew T. Baxter
Hon. Andrew T. Baxter
U.S. Magistrate Judge